L. TERRY et al., Appellees, v. AMERICAN INSURANCE COMPANY, Appellant.

**INSURANCE:** Agents—Unauthorized Act—Failure to Repudiate. An
1  insurer is bound by the unauthorized act of his agent when he fails to repudiate such act promptly when it comes to his knowledge, and permits and invites the insured to act upon the assumption that the policy is in force. So held as to the act of a *soliciting* agent in indorsing on the policy the company's consent to an assignment of the policy.

**INSURANCE:** Agents—Unauthorized Act—Waiver Per Se. Whether
2  an insurance company has waived the unauthorized act of its agent may become a question of law, on non-conflicting testimony.

**Headnote 1:** 26 C. J. p. 132 (Anno.); 32 C. J. pp. 1059, 1069.   **Head-note 2:** 33 C. J. p. 138.

**Headnote 1:** 21 R. C. L. 930.

*Appeal from Allamakee District Court.*—W. J. SPRINGER, Judge.

APRIL 7, 1925.

OPINION ON REHEARING JANUARY 18, 1927.

Action by assignee to recover upon a fire insurance policy. Verdict and judgment for plaintiffs. Defendant appeals. (Former opinion 203 N. W. 17.)—*Affirmed.*

*Sampson & Dillon* and *G. B. Richter*, for appellant.

*W. S. Hart*, for appellee.

MORLING, J.—This case is before us on rehearing, granted in order that the court might receive additional argument and give further consideration to the question whether the case should have been submitted to the jury.

The main question is whether the purported consent of the defendant to an assignment of the policy before loss, indorsed upon the policy by defendant's agent, is binding on defendant.

1. INSURANCE:
agents: unau-
thorized act:
failure to
repudiate.

The policy covered a stock of merchandise and fixtures, and was issued to the then owner, Fett. Fett sold out to plaintiffs, and assigned the policy to them October 1, 1918. Land was defendant's local agent. Land, under date of October 1, 1918, indorsed upon the policy, and signed as agent, defendant's purported consent to the assignment in proper form. Defendant's contention is that Land was only a soliciting agent, and exceeded his authority in giving the consent. Plaintiffs plead the consent as having been made and approved by defendant, and plead also waiver and estoppel. The allegation that the act was performed by the defendant is supported by proof that it was performed through an agent, and the act of the agent ratified. *McColl v. Jordan,* 200 Iowa 961; *Long v. Osborn,* 91 Iowa 160. We assume, for the purpose of the appeal, that Land was only a soliciting agent, and that, merely as such, he had no authority to consent to the assignment. He was, however, the local agent of the defendant, and the policy was issued through him. A loss occurred October 7, 1918. On the same date, Land notified defendant's general agent thereof, and asked him to send an adjuster. We will, for convenience, speak of the transactions had with the general agent as having been with defendant, as no question arises concerning his authority. On October 11, 1918, defendant referred the loss to Carl Miller, an independent adjuster. Miller proceeded to make a personal inspection and investigation, in the course of which he was shown the assignment and the indorsement of consent. On October 20, 1918, Miller made a written report to the defendant. In this report the plaintiffs were named as those with whom the negotiations for adjustment were being carried on, and who said that the companies would have to settle with their attorney; but in it the assignment and consent were not mentioned, Miller assuming evidently that defendant knew about them. The defendant's claim is that it did not then have such knowledge. On October 23, 1918, Mr. Hart, attorney for the plaintiffs, wrote defendant:

"Messrs. L. Terry and H. Rosenberg have employed me to take charge of claim against you under your policy No. 94678, bearing date March 4, 1918, issued by and through Luana, Iowa, agency, by W. F. Land, agent to R. W. Fett, and by R. W. Fett transferred with sale of property to Messrs. Terry & Rosenberg,

and under which a fire loss was recently sustained. * * * the amount tendered in payment of damage sustained was so insignificant and out of proportion with loss actually sustained that Messrs. Terry & Rosenberg could not accept same. They have now turned the policy over to me, with instructions to * * * take the necessary steps to enforce payment * * * Will you give this matter your earliest practicable attention * * * ''

It will be noted at this point that the adjuster employed by the defendant to give attention to this particular loss knew of the assignment of the policy and of the giving in form of defendant's consent thereto by defendant's agent. Defendant also, through its general agent, knew from Mr. Hart's letter that the insured had sold the insured property to plaintiffs and transferred the policy with the property to them, and that it was because thereof that the plaintiffs were claiming the insurance. The knowledge thus acquired by the adjuster was the knowledge of the defendant. *Hemmings v. Home Mut. Ins. Assn.*, 199 Iowa 1311, and cases cited; *Allen v. Phoenix Assur. Co.*, 14 Ida. 728 (95 Pac. 829); *Western Reciprocal Underwriters' Exch. v. Coon*, 38 Okla. 453 (134 Pac. 22); *Corson v. Anchor Mut. F. Ins. Co.*, 113 Iowa 641. In its further dealings with the plaintiffs or their attorneys, the defendant was chargeable with the knowledge of Miller and of the general agent, whether those representatives knew of each other's knowledge or not. *Smeesters v. New Denmark Mut. H. F. Ins. Co.*, 177 Wis. 41 (187 N. W. 986). It must be remembered also that Land was the defendant's agent, and acting as such in consenting to the assignment. The case is not that of one acting voluntarily, or an intruder acting wholly without authority, but that of an agent, who, while acting for his principal, is claimed by his principal to have exceeded his authority. The defendant, charged as it was with knowledge of the sale of the insured property and of the assignment to the plaintiffs and the consent given by its agent, and of the fact that the assignee, through such assignment and consent, was claiming the rights of owner and of insured in the property and the loss sustained, and charged with knowledge that its agent had given the consent, and that in doing so he had exceeded his authority (if such was the fact), was put to its election whether to confirm or repudiate its agent's act. The defendant would not be permitted to play fast and loose with

the plaintiffs, to blow hot and cold, to recognize the assignment and the policy as being in force, induce the plaintiffs to act accordingly, and later repudiate the act of the agent. If the defendant desired to escape liability for the act of its agent, it was bound to disavow such act promptly after it came to its knowledge. Failure to do so would operate as a ratification. *Argus v. Ware & Leland*, 155 Iowa 583; *Story County Tr. & Sav. Bank v. Estate of Youtz*, 199 Iowa 444, 447; *Windahl v. Vanderwilt*, 200 Iowa 816, 823. In this situation, under date of October 28, 1918, the defendant replied to Mr. Hart's letter as follows:

"This acknowledges receipt your letter of the 23rd relative to claim, loss and damage to the property described under policy No. 94678—R. W. Fett, and in reply beg to say that you will find the policy in question provides the manner and form in which any claim for damage should be made, and if there is any loss and damage claimed or sustained to the property for which claim is made, then such claim should be presented in accordance and with the terms and conditions of the policy."

This letter is a plain recognition of the policy as still in force, and an invitation for the presentment of claim,—that is, proofs of loss in accordance with its terms. The defendant did not, in any communication with plaintiffs or their attorneys, disavow the consent or deny Land's authority or question the continued existence of the policy. It appears from the record that the point of disagreement between the adjusters for the defendant and the other insurance companies, on the one hand, and the plaintiffs, on the other, was the amount of the loss; and it appears from the correspondence between defendant and its adjuster that absence of authority in Land to consent to the assignment was, as between them (not, however, communicated to plaintiffs), to be made use of only in the event that plaintiffs would not make what defendant would regard as a reasonable settlement. In the course of this correspondence, and under date of November 7, 1918, Miller informed defendant specifically of the assignment and consent. On November 9, 1918, defendant wrote the adjuster:

"You understand that this agent at Luana is a mere soliciting agent * * * I don't believe his acknowledgment to an assignment would be good, but as stated if he made the ac-

knowledgment we would be willing to recognize it if the assured comes off his high horse and will recognize the loss in proper frame of mind. I am willing to leave it to you.''

A number of letters between plaintiffs' attorney and the defendant followed, in none of which was there any question or repudiation of Land's consent to the assignment. On December 4, 1918, plaintiffs furnished to defendant proofs of loss. During this period, the negotiations between the company and plaintiffs appear to have been limited to a discussion of the question whether one of the adjusters represented defendant, and the amount of the loss. In the course of this correspondence, defendant, in a letter to Mr. Hart, denied that one Allen was authorized to represent it. In a letter dated December 9, 1918, by defendant to Miller, it says:

''Our suggestion therefore was to say nothing about our policy whatever and to take no action * * * We are holding in abeyance the alleged notice of loss and alleged proof of loss that has been submitted by Terry & Rosenberg and we shall reply to it in effect that our policy is in the name of R. W. Fett and there was no assignment. Perhaps this may ultimately raise the question of the validity of the assignment * * * ''

On December 10, 1918, Mr. Hart inquired of defendant whether Miller represented it. On December 31, 1918, defendant wrote a letter to plaintiffs as follows:

''A document dated Waukon, Iowa, December 4, 1918, and signed 'L. Terry and H. Rosenberg by L. Terry' was received at this office and which document as we take, alleges of a certain fire loss and damage to the property described under 'policy No. 94678 of the American Insurance Company of Newark, New Jersey,' and in reply of acknowledgment of receipt by us of said document, we take the liberty of advising that we do not appear, according to the records of this office, to have any policy of insurance of such number in said names; that the only policy we have of said number, 94678, of the Luana, Iowa, agency, is the name of R. W. Fett, of which you will kindly please accept notice.''

On this record, it is uncontrovertible that the defendant did not promptly repudiate its agent's act, but, on the contrary, that, in its dealings with the plaintiffs, it recognized the contract as in effect. Ratification is equivalent to prior authority, and

makes the unauthorized act effective from the time it was done. *Long v. Osborn,* 91 Iowa 160; 2 Corpus Juris 516. Ratification cannot be recalled, or the agent's act, after ratification, repudiated. 2 Corpus Juris 519. Moreover, defendant was purposely refraining from denying the validity of the consent to the assignment. While the position which it took with plaintiffs was intended to be equivocal, the effect of its action was to distract the plaintiffs' attention from any alleged invalidity of the policy, and to cause them to make proofs of loss and bring suit on the induced assumption that the policy was in effect. *Huff v. Century Fire Ins. Co.,* 136 Iowa 464; *Farmers' Milling Co. v. Mill Owners Mut. Fire Ins. Co.,* 127 Iowa 314.

We see no reason why the ratification should be invalid because given after the fire occurred. The property was not destroyed. It was merely damaged. The subject-matter of the policy had not, as defendant contends, ceased to exist. Many considerations might be taken into account by the defendant in determining whether it should ratify or disaffirm. These considerations were for the defendant, in making its determination, and not for the court. Ratification after loss was valid. *Huff v. Century Fire Ins. Co.,* 136 Iowa 464; *National Fire Ins. Co. v. Oliver* (Tex. Civ. App.), 204 S. W. 367; *Northern Assur. Co. v. Grandview Building Assn.,* 183 U. S. 308 (46 L. Ed. 213); *Western Reciprocal Underwriters' Exch. v. Coon,* 38 Okla. 453 (134 Pac. 22); *Ferrar v. Western Assur. Co.,* 30 Cal. App. 489 (159 Pac. 609); *Marqusee v. Hartford Fire Ins. Co.,* 119 C. C. A. 251 (198 Fed. 475, 42 L. R. A. [N. S.] 1025); *Todd v. German American Ins. Co.,* 2 Ga. App. 789 (59 S. E. 94); *Boutwell v. Globe & Rutgers F. Ins. Co.,* 193 N. Y. 323 (85 N. E. 1087). Defendant's contention that the rights of the parties became fixed at the time of the fire, and its citation of *Hall v. Fire Assn. of Philadelphia,* 64 N. H. 405 (13 Atl. 648), are irrelevant. In that case the policy was made payable to a mortgagee. After the property was destroyed, defendant, by agreement with the insured, without the mortgagee's knowledge or authority, referred the question of loss to a referee. It was merely held that, when the loss occurred, the mortgagee's rights were fixed, and could not be defeated or adjusted by agreement with the insured.

We are of the opinion that the defendant must be held to have ratified the act of its agent in granting its consent to the

assignment of the policy. Further, if the question were one of forfeiture, then, on the facts related, defendant ought not to be permitted to deny that the assignment and consent were in full force and effect, or that the policy, so far as Land's authority was concerned, was a valid contract in the hands of the plaintiffs. *Petroff & Co. v. Equity Fire Ins. Co.*, 183 Iowa 906, 914; *Griffith v. Anchor Fire Ins. Co.*, 143 Iowa 88; *Hollis v. State Ins. Co.*, 65 Iowa 454; *Brown v. State Ins. Co.*, 74 Iowa 428; *Lutz v. Anchor Fire Ins. Co.*, 120 Iowa 136; *Huff v. Century Fire Ins. Co.*, 136 Iowa 464.

As has been noted, the letter of October 28, 1918, was, in effect, an invitation to furnish proofs of loss and a recognition of the policy as an existing contract. The plaintiffs went to the trouble and incurred whatever expense might be involved in furnishing proofs. The other letters written to plaintiffs and their attorney, in dealing with the question whether Allen or Miller was in the defendant's employ, carry with them the assumption that plaintiff's rights might depend upon that (the latter) question. The letter of December 31, 1918, if it raises any question at all, merely objects that the designated policy is in the name of Fett, and that the company's records do not show any policy in the name of the plaintiffs. It in no wise suggests any lack of authority on the part of the local agent to consent to an assignment, or any claim of invalidity because of the absence of assignment and consent. If the letter may be construed as a refusal to pay, it is upon the ground that Fett was the insured in the policy named, and entitled to the insurance, and not the plaintiffs.

While we have discussed the case principally with reference to the question whether the allegation that the defendant consented to the assignment is supported by the proof, we are of the opinion that, under the facts, and for analogous reasons, the defendant has waived the right to assert that the contract had terminated because of inadequate authority in its agent to consent to the assignment, and that, by recognizing the contract to be in effect, inviting proofs of loss, and giving as its only excuse for not paying, the fact that the policy was in the name of Fett and that its records did not show any policy of that number in the names of the plaintiffs, thereby in effect stating its reasons for its action, it is estopped, after suit is brought, from

mending its hold and setting up as a defense that the policy was assigned by Fett to the plaintiffs and that the assignment voided the policy because its agent exceeded his authority in consenting to it. *Huff v. Century Fire Ins. Co.*, 136 Iowa 464; *Farmers' Milling Co. v. Mill Owners Mut. Fire Ins. Co.*, 127 Iowa 314; and other cases above cited. The question of ratification, the question of waiver (ordinarily the intentional relinquishment

2. INSURANCE: agents: unauthorized act: waiver *per se*.

of a known right, and involving knowledge and intention), and the question of estoppel, involving reliance by the opposite party, are usually for the jury. Ordinarily, different minds might come to different conclusions on the evidence presented on such questions. Here, it is undisputed that Land was defendant's agent, and countersigned the policy. He was furnished with matter advertising him as agent. The defense is merely that he exceeded the limitations upon his authority. It is undisputed that defendant acted with full knowledge and intentionally, and that the attitude assumed toward plaintiff was intentionally taken. One is presumed to intend the natural consequences of his own acts. His intention, as respects his relation to others, is to be determined by his acts, and not by what he may have secretly, in his own mind, intended. The facts and circumstances are established without conflict, and the question of waiver is, on the record in this case, one of law, and was properly ruled as such. *Swedish Am. Nat. Bank v. Koebernick*, 136 Wis. 473 (117 N. W. 1020); *Foiles v. Detroit Fire & M. Ins. Co.*, 175 Mich. 716 (141 N. W. 879); *Holt v. New England Tel. & Tel. Co.*, 110 Me. 10 (85 Atl. 159); *Rogers v. Whitney*, 91 Vt. 79 (99 Atl. 419); *Pittsburg Const. Co. v. West Side Belt R. Co.*, 227 Pa. St. 90 (75 Atl. 1029); *Helvetia Swiss Fire Ins. Co. v. Allis Co.*, 11 Colo. App. 264 (53 Pac. 242); *Harlow v. Jaseph*, 183 Mich. 500 (149 N. W. 1047); *Sovereign Camp of W. O. W. v. Smith*, 22 Ariz. 1 (193 Pac. 758); *Warner v. Hill*, 153 Ga. 510 (112 S. E. 478); *Holland v. Blanchard* (Tex. Civ. App.), 262 S. W. 97.

We have assumed, for the purpose of the discussion, that Land, though defendant's agent, exceeded his authority originally in giving consent. It is, therefore, unnecessary to consider questions raised as to the admissibility of evidence bearing on his authority, or the point that the extent of Land's authority was a question for the jury.

The judgment is—*Affirmed.*

Evans, C. J., and Stevens and Albert, JJ., concur.