In re Estate of George Johnson.

L. A. Andrew, State Superintendent of Banking, Appellant, v. Estate of George Johnson et al., Appellees.

No. 39566.

September 22, 1930.

892

*John Fletcher*, Attorney-general, *Blythe, Markley, Rule & Clough*, and *Bailie & Edson*, for appellant.

*Robert Healy, L. H. Weisenburger*, and *C. H.Wegerslev*, for appellees.

WAGNER, J.—The matters involved in this litigation arise out of the transactions of three banks, to wit, the City Commercial Savings Bank of Mason City, the Alta State Bank of Alta, and the Greenville Savings Bank of Greenville. The decedent was one of the directors of the Alta State Bank. This litigation is upon a claim against the estate, based upon a written contract of guaranty, which, according to the record, was signed by the decedent and other directors of the Alta State Bank. On July 23, 1921, the date of the written contract, the Greenville Savings Bank was liable to the Alta State Bank upon rediscounts in the sum of $108,000; and at that time, the Alta State Bank was liable to the City Commercial Savings Bank for money borrowed and on rediscounts in the total sum of $141,411.72, the payment of which latter indebtedness had been guaranteed by the directors of the Alta State Bank. It is apparent that the Alta State Bank was interested in being relieved from its heavy indebtedness to the City Commercial Savings Bank, and the Alta State Bank proposed to the City Commercial Savings Bank that, if the latter bank would release and discharge said indebtedness in the amount of $108,000, it (the debtor bank) would transfer to the creditor bank the rediscounts which had been received from the Greenville Savings Bank, and that the Alta State Bank would pay in cash $8,411.72, thereby reducing the indebtedness of the debtor bank to the creditor bank to the sum of $25,000, and would procure a written guaranty from its directors, guaranteeing the payment of the remaining indebtedness, of $25,000, and the Greenville Savings Bank notes which were to be trans-

ferred in the deal, and all renewals and extensions thereof and substitutions therefor. The proposition of the Alta State Bank was accepted by the City Commercial Savings Bank, and on said date, a lengthy contract, covering about five pages of the abstract, was accordingly entered into. It purports to have been executed by the Alta State Bank, as first party, the City Commercial Savings Bank, as second party, and the individual directors of the Alta State Bank, as third parties. Because of the length of the contract, we will not set it out *in extenso,* but will give only the portions which appear to be material to the matter in controversy. It provides:

"Now, therefore, in consideration of the agreements of first party, hereinbefore set forth, and of the agreement of guaranty of the parties of the third part, hereinafter set forth, second party does hereby accept the first party's proposal, as above set forth; and in consideration of second party's acceptance of said proposal, and adjustment of the indebtedness of first party to second party, as hereinbefore outlined, C. P. Corneliussen, Joseph H. Allen, A. W. Peterson, G. E. Cameron, George Johnson and R. C. Brogmus, parties of the third part, each for himself, does hereby personally guarantee. the prompt payment, at maturity or thereafter, of all indebtedness of the Alta State Bank to said City Commercial Savings Bank, of Mason City, Iowa, now existing or which may hereafter be incurred, of every nature, either by direct obligation, open account, rediscounts or substitutions therefor, promissory notes, certificates of deposit, or otherwise, or as endorsers, surety or guarantors, not in excess, however, at any one time, of $25,000 together with interest at the rate of eight per cent per annum, payable annually, from date hereof, and all extensions and renewals thereof; and also guarantees the prompt payment to said City Commercial Savings Bank, at maturity or thereafter, of all that part of the indebtedness of the Greenville Savings Bank, of Greenville, Iowa, which is to be assigned to and taken over by said City Commercial Savings Bank from said Alta State Bank, represented by customers' notes of said Greenville Savings Bank, rediscounted by said Alta State Bank in sums aggregating about $108,000, and all renewals or extensions or substitutions taken therefor, and all promissory notes of said Greenville Savings Bank taken in lieu thereof, and

894

all renewals and extensions of said indebtedness. * * * It is understood and agreed that it is the intention and purpose that this agreement shall be and is hereby declared to be a continuing guarantee to said City Commercial Savings Bank until all indebtedness and obligations of the said Alta State Bank and said Greenville Savings Bank, to said Commercial Savings Bank, now existing or which may hereafter exist during the life of this agreement, within the limits above provided, have been fully paid and liquidated. * * * It is also understood and agreed that this guarantee shall cover all extensions and renewals on all present or future indebtedness and obligations of said Alta State Bank and said Greenville Savings Bank to said City Commercial Savings Bank, and we do hereby authorize second party in its discretion, without notice to us, to extend or renew any or all of the obligations of said banks, or either of them, present or future, as often as may be requested or deemed advisable, and we also authorize said bank, without notice to us, to renew or extend collateral notes, rediscount notes and other obligations or securities to the indebtedness of either of said banks, when necessary or advisable, and to take substitute rediscount notes, and to exchange or release collateral securities or increase the amount thereof when deemed advisable, and we agree that such extensions, renewals, substitutions, increase or release or exchange of collateral security shall in no way affect our liability under this guarantee. * * * This agreement shall be binding upon the heirs, devisees, administrators, executors, legal representatives and assigns of the parties of the third part and shall pass to and inure to the benefit of the successors or assigns of said City Commercial Savings Bank.''

The signature of the first party is as follows: ''Alta State Bank, Alta, Iowa, By L. E. Swanson, its Cashier.'' The record establishes the fact that at said time L. E. Swanson was the cashier of said bank, and affixed the aforesaid signature to the contract. The signature of the second party is as follows: ''City Commercial Savings Bank, By Walter J. Walker, its Vice president.'' The record establishes the fact that Walter J. Walker was the vice president of said bank, and affixed said signature to the contract. The contract also purports to have been signed by the aforesaid third parties (the directors of the Alta State

Bank), including the decedent. As between the Alta State Bank and the City Commercial Savings Bank, the contract has been fully performed. In accordance with the contract, the City Commercial Savings Bank received the rediscounts which the Alta State Bank had obtained from the Greenville Savings Bank, and discharged the indebtedness of the Alta State Bank to the City Commercial Savings Bank in the sum of $108,-000; the $8,411.72 provided in the written contract to be paid by the Alta State Bank has been paid; also, the remaining $25,000 indebtedness of the Alta State Bank has been paid; the obligations guaranteed by the guarantors have been paid, except the sum of approximately $23,000 and interest, and it is this amount for which the claimant asks the establishment of its claim against the estate of decedent.

In the claim, as amended, the claimant alleges the execution of the aforesaid written contract by all of the parties thereto, and the delivery of the same to the City Commercial Savings Bank, and the performance thereof as between the two banks. In the answer to the claim, the administrators allege that, in addition to the denial existing by operation of law to said claim, they expressly and specifically deny each and every averment contained in said claim, ''except what is hereinafter expressly and specifically admitted. * * * That said George Johnson, in his lifetime, was not bound by any of the terms thereof, and said claim is not a valid claim against this estate, for the following reasons: * * * that, at the time the said George Johnson signed his name to said instrument, he was mentally incapable of making any contract or agreement of any kind.'' In an amendment to the answer, the administrators allege that the claim is barred by the statute of limitations, and that the written guaranty was without consideration. Upon these issues, the case was tried to the court and a jury. During the progress of the trial, the aforesaid written contract was introduced in evidence, with leave granted by the court, at that time, to subsequently move to strike the same. At the close of the claimant's evidence, the court sustained the motion made by the administrators to strike the contract from the evidence, and sustained their motion for a directed verdict. Since the claim is founded upon the written contract of guaranty, the primary question in the case is as to whether, under the record as made, said contract was admissible in evidence.

The contract of guaranty purports to have been signed by the decedent, and a copy of same was attached to and constituted a part of the claim. Does the record establish the genuineness of the signature of the decedent? It is provided by our statutory law, Section 11218, Code, 1927, that:

"When a written instrument is referred to in a pleading, and the same or a copy thereof is incorporated in or attached to such pleading, the signature thereto, and to any indorsement thereon, shall be deemed genuine and admitted, unless the person whose signature the same purports to be shall, in a pleading or writing filed within the time allowed for pleading, deny under oath the genuineness of such signature."

It is provided by Section 11961, Code, 1927, that:

"All claims filed [against estates], and not expressly admitted in writing signed by the executor or administrator, with the approbation of the court, shall be considered as denied, without any pleading on behalf of the estate * * *."

The administrators in their answer allege defensive matter in addition to the statutory denial arising by operation of the aforesaid statute. The statute, Section 11961 of the Code, in and of itself puts in issue the truth of every allegation and claim which is essential to the plaintiff's recovery. See *Smith v. King*, 88 Iowa 105. In the cited case, we said:

"The law puts in issue the truth of every allegation and claim which is essential to the plaintiff's recovery. It disposes of the presumptions which ordinarily obtain in favor of the genuineness of the signature to a written instrument when the statutory denial is not made, and says to the claimant, 'The burden is on you to show that the decedent executed this note, before you can make it evidence against his representative.'"

It is shown by the evidence that the signature of the decedent purporting to be attached to the written guaranty is the signature of the deceased. It is admitted in the defendants' answer that the signature is that of the decedent. The answer alleges, in addition to the statutory denial, a denial and an affirmative defense not divided in separate counts. In the cited case, we further said:

"As no pleading is required on behalf of the executor, the denial which the law makes continues to exist in his favor, even if he file a pleading, except in so far as he may, by such pleading or otherwise, waive the provisions of the statute."

The appellant contends that the administrators, having admitted in the answer the signature of the decedent, thereby waived the provisions of the statute. We find it unnecessary to pass upon this proposition. Since the record clearly shows the signature of the decedent to be genuine, and also shows the delivery of the instrument, and the same was in the possession of the claimant receiver at the time of the trial, the contract was clearly admissible in evidence, had it been only a contract of guaranty as between the directors and the City Commercial Savings Bank.

The aforesaid written contract is, in reality, two contracts: one between the Alta State Bank and the City Commercial Savings Bank, for the receipt by the latter of the rediscount notes in the sum of $108,000 and the discharge of the indebtedness of the debtor bank in said amount, etc., and the other a guaranty by the directors, including the decedent, of the payment of the remainder of the indebtedness of the debtor bank and the rediscount notes and any renewals and extensions thereof or substitutions therefor. Since the signature of the decedent to the written guaranty is proven, the contract was admissible in evidence, as establishing the contractual liability existing between him and the City Commercial Savings Bank on his written contract of guaranty. It must be borne in mind that this is not an action against the Alta State Bank, but only against the estate of the decedent. It is clearly shown by the record that the contractual relations, as between the two banks, have been fully executed.

The trial court withdrew the contract from the consideration of the jury, for the reason, as claimed, that it was not shown that the cashier of the Alta State Bank was authorized by the  board of directors of said bank to enter into the contract. It may be conceded that the giving of notes by the debtor bank to the creditor bank in payment of indebtedness is not the ordinary and usual course of business, and that the action of the officers in entering into a contract to that

effect would require the authorization by the board of directors of the respective banks. See *Leach v. First Nat. Bank of Ft. Dodge,* 206 Iowa 265; *Schneitman v. Noble,* 75 Iowa 120; 7 Corpus Juris 526. The testimony, including the minutes of the board of directors of the City Commercial Savings Bank, shows the authorization and approval of the contract by the directors of said bank.

The court excluded the minutes of the meeting of the board of directors of the Alta State Bank, held on the same date of the execution of the contract. The record of said meeting is obscure,  referring to a resolution of the City Commercial Savings Bank of Mason City, said to be attached. No resolution is attached. The appellant claims to have made the endeavor to prove by parol testimony that the authorization of the making of a contract was made by the board of directors at said meeting, but objections to the testimony offered were sustained, and the minutes excluded. The record fails to show, either by the form of the questions propounded or by offer of testimony or otherwise, what the answers to the interrogatories propounded would have been. It has been the repeated pronouncement of this court that, in such a situation, no prejudicial error is shown. See *Anderson v. Fort Dodge, D. M. & S. R. Co.,* 208 Iowa 369; *First State Bank of Riverside v. Tobin,* 204 Iowa 456; *Schooley v. Efnor,* 202 Iowa 141; *Arnold v. Fort Dodge, D. M. & S. R. Co.,* 186 Iowa 538; *Arnold v. Livingstone,* 155 Iowa 601; *Reynolds & Heitsman v. Henry,* 193 Iowa 164; *Bomgren v. Hanish,* 194 Iowa 1117.

However, the fact that the record fails to show the previous authorization by the board of directors of the Alta State Bank of the action of the cashier in signing and entering into the contract is not sufficient reason for excluding the contract from the evidence, provided that the record of the trial establishes ratification by the bank of the contract. See *Long v. Osborn,* 91 Iowa 160; *Smith v. Des Moines Nat. Bank,* 107 Iowa 620; *McColl v. Jordan,* 200 Iowa 961; *Dodd v. Groos,* 175 Iowa 47; *State Bank of Tabor v. Kelly,* 109 Iowa 544; *Terry v. American Ins. Co.,* 202 Iowa 1291; *Old Line Life Ins. Co. v. Jones,* 206 Iowa 664; *Argus v. Ware & Leland,* 155 Iowa 583; *Story County Tr. & Sav. Bank v. Estate of Youtz,* 199 Iowa 444; *Windahl v. Vanderwilt,* 200

Iowa 816; *Athearn v. Independent Dist. of Millersburg*, 33 Iowa 105; *Wisconsin Lbr. Co. v. Greene & Western Tel. Co.*, 127 Iowa 350; *Fidelity Ins. Co. v. German Sav. Bank*, 127 Iowa 591; *West Salem Land Co. v. Montgomery Land Co.*, 89 Va. 192 (15 S. E. 524); 14A Corpus Juris 382 to 390, inclusive; Zane on Banks and Banking 167, 168; *Western Nat. Bank v. Armstrong*, 152 U. S. 346 (38 L. Ed. 470); *Ida County Sav. Bank v. Johnson*, 156 Iowa 234; 7 Corpus Juris 537, 538, 539. Many other authorities could be cited upon this proposition. It cannot be doubted that each bank could legally have authorized the officer purporting to act for it to enter into the written contract. What the banks could previously have authorized, they could subsequently ratify. Ratification operates upon the act ratified precisely as though authority to do the act had been previously given; and when the principal has ratified the unauthorized agreement of an agent, an action may be brought upon the agreement as though originally made by due authority. In substantiation of the principles announced, we make some quotations from the cited cases. In *Long v. Osborn*, 91 Iowa 160, this court declared:

"It is the general rule that the adoption by a principal of the unauthorized acts of an agent goes back to the inception of the transaction, and continues to its end. *Eadie v. Ashbaugh*, 44 Iowa 520; Mechem, Ag., Section 167; 1 Am. & Eng. Encyclopedia of Law, 429. 'The ratification operates upon the act ratified precisely as though authority to do the act had been previously given except when the rights of third parties have intervened between the act and the ratification.' *Cook v. Tullis*, 18 Wall. 332. We are of the opinion that, when the unauthorized agreement of an agent has been ratified by his principal, an action may be brought thereon, as though originally made by due authority, and that it is not necessary, in the first instance, to allege in the pleading the ratification, but that it may be shown in proof of the agreement."

In *Smith v. Des Moines Nat. Bank*, 107 Iowa 620, this court made the following pronouncement:

"Such ratification is equivalent to prior authority, and need not be specially pleaded."

In *McColl v. Jordan*, 200 Iowa 961, we said:

"Defendant's adoption of the execution would go back to the inception of the transaction, continue to its end, and might be proved under the allegation that the defendant made and delivered the note."

In *Dodd v. Groos,* 175 Iowa 47, the court declared:

"The ratification of an unauthorized act of an agent relates back to its inception, and may be alleged as the act of the principal."

In *State Bank of Tabor v. Kelly,* 109 Iowa 544, this court made the following pronouncement:

"It is elementary that, if the bank, with knowledge of the terms on which Coats [the agent] received the Baldwin note, took and retained the same without objection, it will be held to have ratified what Coats did."

In *Terry v. American Ins. Co.,* 202 Iowa 1291, we said:

"The allegation that the act was performed by the defendant is supported by proof that it was performed through an agent, and the act of the agent ratified. * * * If the defendant desired to escape liability for the act of its agent, it was bound to disavow such act promptly after it came to its knowledge. Failure to do so would operate as a ratification."

In *Argus v. Ware & Leland,* 155 Iowa 583, we made the following pronouncement:

" '* * * and when it [the unauthorized act of the agent] is so ratified, it is as if the principal had given an original authority to that effect, and the ratification relates back to the time of the act which is ratified. He [the principal] must disavow the act of his agent within a reasonable time after the fact has come to his knowledge, or he will be deemed to have ratified it. * * * The failure of the complainants to repudiate the action of their agents in the sale immediately after it was reported to them would operate as a ratification.' "

In *Windahl v. Vanderwilt,* 200 Iowa 816, we declared:

"It was upon the defendant, as principal, to either ratify or repudiate, when the unauthorized act became known to him.

He failed to repudiate promptly, and he is presumed to have ratified.''

In *Athearn v. Independent Dist. of Millersburg*, 33 Iowa 105, this court said:

''Corporations may ratify contracts made without their authority, and thus become bound thereby like natural persons, the same rule of law being applicable to each. This is a doctrine so familiar that the citation of any of the numerous authorities supporting it is unnecessary. Performance of a contract, permission to the party with whom the corporation contracts to perform, the acceptance of the performance or of the fruits of the performance by the corporation, acquiescence in the contract, payment to the other party, and the like, all operate as acts of ratification.''

In *Fidelity Ins. Co. v. German Sav. Bank*, 127 Iowa 591, we declared:

''There is no pretense that the terms of the arrangement under which the stock was issued to the plaintiff were not fully known to the directors of the company when they treated this stock as a portion of the company's assets and collected the certificates of deposit issued to the plaintiff in pursuance of the reorganization. The board of directors of the plaintiff, by ratification, gave to the action of the president and secretary all the authority in the premises which could have been given by a previous express authorization.''

In *West Salem Land Co. v. Montgomery Land Co.*, 89 Va. 192 (15 S. E. 524), the court quotes from 1 Beach on Private Corporations, Sections 195, 197, the following:

'' 'Directors may ratify the unauthorized acts of their appointees, or the acts of other corporate officers, which should not have been done without authority first obtained from the directors. * * * If a person assuming to act as agent of a corporation, but without legal authority, or an agent in excess of his proper authority, makes a contract, and the company knowingly receive and take the benefit of it, this will be a ratification of the contract, and render the corporation liable as a party to it.''

Many other quotations of a similar nature could be made from the authorities.

The ratification need not be express, but may be, and more often is, implied. It is not necessary that the ratification appear of record. See *Ida County Sav. Bank v. Johnson,* 156 Iowa 234; *Athearn v. Independent Dist. of Millersburg,* 33 Iowa 105; *Washington Sav. Bank v. Butchers & Drovers' Bank,* 107 Mo. 133 (17 S. W. 644, 28 Am. St. 405); *Cantrell v. Davidson,* 180 Mo. App. 410 (168 S. W. 271); 7 Corpus Juris 538, 539. In *Cantrell v. Davidson,* 180 Mo. App. 410 (168 S. W. 271), the court declared:

"When the bank accepted and retained the money for the note, it was bound by the transaction, and even if the settlement and agreement to turn over the note was unauthorized, it could ratify such transaction, and such ratification need not be evidenced by a formal resolution of the board of directors. * * * The knowledge of the officers and directors of the bank was the knowledge of the bank itself."

The evidence amply establishes the fact that. the directors of the Alta State Bank, with full knowledge of the execution of the contract by its cashier, ratified the same. The same instrument which was signed by the cashier of the Alta State Bank was also signed by the directors, including the decedent, as guarantors, and was delivered to the City Commercial Savings Bank. This contract which the guarantors signed provided that the rediscounts which the Alta State Bank had received from the Greenville Savings Bank were to be assigned to and taken over by the City Commercial Savings Bank. The directors knew of the provisions of the contract; they did not then, or at any time thereafter, repudiate it. The record discloses communications whereby one of the officers and directors who signed the guaranty contract forwarded the notes to the City Commercial Savings Bank, and received from said bank a letter acknowledging the receipt of same. The Alta State Bank has received the full benefits of the contract according to its terms. No other conclusion can be reached than that the bank, through its directors, had full knowledge of the execution of the contract by the cashier, and that, with full knowledge, it was fully performed by the two banks, in accordance with its terms. Without further discussion, it is quite clear that there has been complete ratification

of the contract. This being true, in view of the foregoing authorities hereinbefore cited, the court was in error in withdrawing the contract from the consideration of the jury and in sustaining the motion for a directed verdict.

The appellees also asked for a directed verdict, for the reason, as claimed, that the action is barred by the Statute of Limitations. It is conceded that the claim was filed within the period of six months from the first publication of the notice of appointment of the administrators, and it is obvious that the claim is not barred by the Statute of Limitations.

At the close of claimant's evidence, the appellees moved to strike portions of the testimony and exhibits other than the aforesaid written contract. If the court's ruling may be construed as striking other portions of the evidence, the ruling was clearly erroneous.

Other matters upon which complaints are made are not likely to occur on a new trial, and need no consideration. For the foregoing reasons, the judgment of the trial court is reversed, and the cause remanded for a new trial.—*Reversed.*

MORLING, C. J., and STEVENS, DE GRAFF, and ALBERT, JJ., concur.